**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:22-cv-20456-JEM/Becerra

JUAN RAMON GOMIS RABASSA,

    Petitioner,

v.

UNITED STATES OF AMERICA, *et al.*,

    Respondents.
_____/

**REPORT AND RECOMMENDATION ON RESPONDENT UNITED STATES OF AMERICA'S MOTION TO DISMISS AMENDED PETITION TO QUASH[1]**

THIS CAUSE came before the Court on Respondent United States of America's (the "Government") Motion to Dismiss Petitioner Juan Ramon Gomis Rabassa's ("Petitioner" or "Rabassa") Amended Petition to Quash Summons (the "Motion to Dismiss"). ECF No. [13]. Petitioner filed a Response in Opposition to the Motion to Dismiss, ECF No. [16], and the Government filed a Reply, ECF No. [20]. The Parties appeared for oral argument before the undersigned. *See* ECF No. [27]. After a review of the instant Motion, the pertinent portions of the record, and the relevant authorities, and for the reasons stated below, it is hereby **RECOMMENDED** that the Government's Motion to Dismiss, ECF No. [13], be **GRANTED**.

**I.  BACKGROUND**

On January 26, 2022, Respondent, the Internal Revenue Service (the "IRS"), issued a summons (the "Summons") to Non-Party Banco de Sabadell, S.A. (the "Bank") at its principal place of business in Miami, Florida. ECF No. [12-1] at 1; *see also* ECF No. [12] at 2. The

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [21].

Summons seeks records "with respect to any account – including credit or debit card accounts and investment accounts – in the name of, under signature of, or for the benefit of [Petitioner] Juan Ramon Gomis Rabassa ('Relevant Accounts') including, but not limited to, account number USD 24995 and account number EUR 25001 (under portfolio number 201970-1)," and requests specific categories of documents therein. *Id.* at 6. The Summons further states that it is issued "[i]n the matter of the Spanish Income and Capital Tax Liabilities of: Juan Ramon Gomis Rabassa." *Id.* at 2, 6. A copy of the Summons was sent to Petitioner. ECF No. [13-1] at 4.

On February 14, 2022, Petitioner filed a Petition to Quash the Summons in this Court. ECF No. [1]. The Government moved to dismiss the Petition to Quash. ECF No. [7]. Petitioner then filed a motion for leave to amend the Petition to Quash, which the District Court granted. ECF No. [11].

On October 28, 2022, Petitioner filed the Amended Petition to Quash the Summons (the "Amended Petition"). ECF No. [12]. In the Amended Petition, Petitioner challenges both the substance and form of the Summons. First, Petitioner argues that the IRS cannot pursue the Summons in good faith because the U.S.–Spain Treaty[2], upon which the Summons is based, is inapplicable to Petitioner due to his non-resident status in both Spain and the United States. ECF No. [12] at 7–11. Petitioner adds that for the same reason, enforcement of the Summons would be an abuse of the Court's process. *Id.* at 11. Second, Petitioner argues that the Summons should be quashed because "the Government's purported civil investigatory efforts are instead a clearly

---

[2] The Convention Between the United States of America and the Kingdom of Spain for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, Spain–U.S., Feb. 22, 1990 (the "U.S.–Spain Treaty"), was amended in 2013 by the Protocol Amending the Convention Between the United States of America and the Kingdom of Spain for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Tax Income, Spain–U.S., Jan. 14, 2023, S. Treaty Doc. No. 113-4, 1990 WL 10696296.

veiled effort to assist a foreign government in launching an investigation against the Petitioner for potential criminal activity." *Id.* at 11–13. Finally, Petitioner argues that the Summons is "misdirected to the Petitioner" both because it is defective on its face, and because the IRS failed to provide notice of the Summons to a third-party. *Id.* at 13–14.

## II.   THE INSTANT MOTION

The Government filed the instant Motion to Dismiss the Amended Petition for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. [13]. The Government argues that the Amended Petition should be dismissed because Petitioner failed to rebut the Government's prima facie case of good faith for issuance of the Summons, and failed to otherwise show that enforcement of the Summons would be an abuse of the Court's process. *Id.* Specifically, the Government argues that it has established its prima facie case of good faith through the declarations of IRS employees Tina Masuda and Floyd Penn, Jr., who attest that the information sought in the Summons is for the legitimate purpose of assisting a treaty partner and may be relevant to the treaty partner's investigation of Petitioner. *Id.* at 7–9. The Government contends that Petitioner's arguments in the Amended Petition are irrelevant because the only inquiry at issue is whether the IRS acted in good faith, and not whether the Spanish Tax Authorities' underlying investigation has a good faith basis or would subject Petitioner to criminal penalties in Spain. *Id.* at 7–13. While the Government maintains that Petitioner's final argument regarding notice is irrelevant, the Government notes that it fulfilled its notice obligations as Petitioner was the only party identified in the Summons, and he did receive notice. *Id.* at 13–16.

Petitioner filed a Response in Opposition to the Motion to Dismiss (the "Response"). ECF No. [16]. In his Response, Petitioner argues first, as he did in the Amended Petition, that the Government "cannot, logically, act in good faith in continuing to pursue a request from a treaty

3

partner after it has been placed on notice through the declaration in the Amended Petition that there is no basis under the applicable treaty to pursue the request." *Id.* at 2–3. Similarly, Petitioner argues that it "would be an abuse of the Court's process to find that use of the U.S.–Spain Treaty on a non-resident of Spain or the United States during the subject tax years is foreseeably relevant for carrying out the U.S. –Spain Treaty." *Id.* at 9. Second, Petitioner argues that the Summons is improper because it would necessarily result in a Spanish criminal investigation. *Id.* at 12. Third, Petitioner challenges the Summons as defective on its face for failing to expressly allege that it is assisting a Spanish investigation, and instead improperly alleging that it is being used for the enforcement of the Internal Revenue laws. *Id.* Finally, Petitioner argues that the Summons is defective because the IRS failed to provide notice to a third-party who allegedly owns the accounts mentioned in the Summons. *Id.* at 12–13. Petitioner concludes by requesting an evidentiary hearing on "any disputed factual issues on residency, taxpayer status and the Powell factors." *Id.* at 13.

The Government filed a Reply in Support of its Motion to Dismiss. ECF No. [20]. In its Reply, the Government argues that Petitioner has not presented any support for his contention that the IRS was trying to use the Court's process for an improper purpose. *Id.* at 2. The Government reiterates that Petitioner's residency status is irrelevant, and the "operative inquiry in a summons enforcement proceeding is whether *the IRS* acted in good faith. The Court need not, and should not, wade into the law of the foreign treaty partner." *Id.* at 3 (emphasis in original). Because the IRS properly complied with a treaty partner's request, the Government contends that the IRS acted in good faith and the inquiry need not dive into the underlying merits of the Spanish Tax investigation. *Id.*

As to Petitioner's notice argument, the Government states "Petitioner's manufactured—and legally incorrect—notice argument distracts from the sole issue in these proceedings: whether the [IRS] issued the summons in good faith." *Id.* at 8. Finally, the Government argues that an evidentiary hearing is unnecessary and improper where, as here, Petitioner has not pointed to "specific facts or circumstances plausibly raising and inference of bad faith" by the IRS. *Id.* at 9 (citing *United States v. Clarke*, 573 U.S. 248, 254 (2014)).

The Parties appeared for oral argument before the undersigned (the "Hearing"). *See* ECF No. [27]. At the Hearing, Petitioner articulated a third argument as to his residency—which was unsupported by case law, as he deemed it was a "case of first impression." *Id.* Petitioner argued that the Court need not even reach the question of whether the Summons was issued in good faith, because the IRS was without authority to issue the Summons at all. *Id.* Petitioner took the position that because he was not a resident of Spain or the United States, and because his reading of the U.S.–Spain Treaty indicated that its scope was limited to residents of Spain or the United States, Petitioner was not subject to the treaty and the Summons was plainly improper. *Id.*

The Government countered that Article 27 of the U.S.–Spain Treaty clarified that its scope was not limited to residents in carrying out exchange of information requests, as the IRS was doing here, and therefore Petitioner was subject to the treaty. *Id.* The Government maintained that even so, the Court must reach the question of good faith issuance of the Summons as that is the only relevant inquiry in summons enforcement proceedings. *Id.* Petitioner further challenged the form of the Summons, arguing that it did not adequately state that the Summons was being issued on behalf of Spain's request. *Id.* The Government responded that the Summons clearly stated, in both the cover page and the first page of the Summons, that it was being issued at the request of the Spanish tax authorities. *Id.* The Motion is now ripe for review.

5

### III. ANALYSIS

Section 7602 of the Internal Revenue Code gives the IRS broad authority to issue a summons to "any [] person the Secretary [of Treasury] may deem proper to appear before the Secretary [of Treasury] at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to" determine "the liability of any person for any internal revenue tax". 26 U.S.C. §7602(a). Section 7602 extends to requests made to the IRS by treaty partners. *See United States v. Stuart*, 489 U.S. 353 (1989); *Verges v. United States*, No. 18-cv-60235, 2018 WL 3423965, at *1 (S.D. Fla. June 27, 2018) (finding good cause where IRS issued summons pursuant to Spanish tax authorities' request).

"A person receiving an IRS summons is . . . entitled to contest it in an enforcement proceeding." *Clarke*, 573 U.S. at 253. "Yet [the Supreme Court has] also emphasized that summons enforcement proceedings are to be 'summary in nature.'" *Id.* at 254 (citing *Stuart*, 489 U.S. at 369). Accordingly, in summons enforcement proceedings, "courts may ask only whether the IRS issued a summons in good faith, and must eschew any broader role of 'oversee[ing] the [IRS's] determinations to investigate.'" *Id.* (citing *United States v. Powell*, 379 U.S. 48, 56 (1964)).

The Government can make its prima facie showing of good faith through the four-factor test outlined in *United States v. Powell*, 379 U.S. 48, 56 (1964) (the "*Powell* factors"). Specifically, the Government must show: "(1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry will be relevant to that purpose, (3) that the information sought is not already in the IRS' possession and, (4) that it has taken the administrative steps necessary to the issuance of a summons." *La Mura v. United States*, 765 F.2d 974, 979 (11th Cir.

6

1985) (citing *Powell*, 379 U.S. at 57–59). "The [Government] can satisfy this burden merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts." *La Mura*, 765 F.2d at 979 (citing *Matter of Newton*, 718 F.2d 1015, 1019 (11th Cir. 1983)).

The burden then "shifts to the party contesting the summons [herein, Petitioner] to disprove one of the four elements of the government's prima facie showing or convince the court that enforcement of the summons would constitute an abuse of the court's process." *Id.* at 979–80. "The burden on the contesting party is a 'heavy one,' requiring allegations of specific facts and introduction of evidence." *Verges*, 2018 WL 3423965, at *1 (citing *United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir. 1992)).

### A. Petitioner Is Not Exempt from the U.S.–Spain Treaty.

At the outset, Petitioner argues that the Court need not reach the *Powell* factors at all because the U.S.–Spain Treaty does not apply to Petitioner. *See* ECF No. [27]. Specifically, Petitioner contends that the U.S.–Spain Treaty applies only to residents of Spain and/or the United States, and that Petitioner is not a resident of either country. *Id.* In making this argument, Petitioner relies on two sections of the U.S.–Spain Treaty. *Id.*; *see also* ECF No. [16] at 5.[3] Section 1 of Article 1 provides: "This Convention shall apply to persons who are residents of one or both of the Contracting States, except as otherwise provided in the Convention." U.S.–Spain Treaty at art. 1 § 1. In addition, Section 1 of Article 4 provides a definition of "resident" as used in Article 1:

> For the purposes of this Convention, the term 'resident of a Contracting State' means any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, place of management, place of incorporation, or any other criterion of similar nature, provided, however, that this term does not include

---

[3] At the Hearing, Petitioner articulated for the first time his argument that the Court need not reach the *Powell* factors due to his non-resident status in both Spain and the United States. However, Petitioner lodged similar arguments as to his residency in his analysis of the *Powell* factors within his briefing, which he used at the Hearing to support this new argument.

> any person who is liable to tax in that State in respect only of income from sources in that State.

U.S.–Spain Treaty at art. 4 § 1. Petitioner argues that a plain reading of these two sections makes clear that non-residents are exempt from the treaty's reach, and further states that "[t]he U.S.–Spain Treaty does not provide another basis for which it would apply to the Petitioner considering his non-resident status and his payment in full of his non-resident tax obligations." ECF Nos. [12] at 10; [16] at 3, 5–6.

The Government argues that Petitioner's residency is irrelevant because the U.S.–Spain Treaty is not limited to residents of either country. *See* ECF No. [27]; *see also* ECF No. [13] at 7–8. The Government cites Section 1 of Article 27, which provides:

> The competent authorities of the Contracting States shall exchange such information as is foreseeably relevant for carrying out the provisions of this Convention or to the administration or enforcement of the domestic laws concerning taxes of every kind and description imposed by a Contracting State to the extent that the taxation thereunder is not contrary to the Convention. **The exchange of information is not restricted by paragraph 1 of Article 1 (General Scope) or Article 2 (Taxes Covered).**

U.S.–Spain Treaty Article 27 Section 1 (emphasis added). Because the article governing exchange of information requests explicitly states that Article 1 does not restrict its scope, the Government contends that the U.S.–Spain Treaty does apply to Petitioner. *See* ECF No. [27]; *see also* ECF No. [13] at 7–8. In response, Petitioner argues that "[t]he Government's reliance upon a broad Amendment to the U.S.–Spain Treaty is inapplicable because under that interpretation the Amendment could be utilized for regarding anyone, anywhere in the world, regardless of a nexus and even someone who has never been to or done business with Spain." ECF No. [16] at 3. Petitioner provides no authority for this proposition, arguing at the Hearing that it was an issue of first impression. *See id.*; ECF No. [27].

The Court finds that the U.S.–Spain Treaty applies to Petitioner herein. While Article 1 of the treaty outlines its scope, it also states that the scope is limited "except as otherwise provided in the Convention." U.S.–Spain Treaty at art. 1 § 1. Article 27, upon which the Government relies, does "otherwise provide" for a scope that plainly includes the Petitioner. U.S.–Spain Treaty at art. 27 § 1 ("The exchange of information is not restricted by paragraph 1 of Article 1 (General Scope) or Article 2 (Taxes Covered)."). The Petitioner's reading would limit the treaty not only to information maintained within the territory of the country but also only as to its residents, thereby leaving information maintained within the country completely out of the treaty's scope where the information relates to non-residents. The plain language of the U.S.–Spain Treaty does not support such a reading. As such, the U.S.–Spain Treaty applies to Petitioner and the Court moves on to the *Powell* factors.

### B. The Government Established Its Prima Facie Case Of Good Cause.

In making its prima facie case under the *Powell* factors, the Government relies on the declarations of two IRS employees involved in the issuance of the Summons: Tina B. Masuda ("Masuda"), the Exchange of Information Program Manager in the Large Business and International Division of the IRS in Washington D.C., and Floyd Penn, Jr. ("Penn"), an Exchange of Information Team Manager in the same division of the IRS. ECF Nos. [13-1], [13-2]. Through these declarations, the Government has satisfied each of the *Powell* factors.

First, the Government has shown "that the investigation will be conducted pursuant to a legitimate purpose." *La Mura*, 765 F.2d at 979 (citing *Powell*, 379 U.S. at 57–59). In her affidavit, Masuda stated that her office received an Exchange of Information ("EOI") request from the Competent Authority of Spain pursuant to Article 27 of the U.S.–Spain Treaty. ECF No. [13-1] at 2. Masuda stated that the EOI request indicated that Petitioner is under examination by the

9

Spanish Tax Authorities for individual income taxes and capital taxes, and that the Spanish Tax Authorities believe that Petitioner is an ultimate beneficial owner of the entity Technical Minds Investments S.L. *Id.* at 2–3. The Competent Authority of Spain identified two large transfers of funds (totaling more than $10 million) into the Bank with transfer descriptions identifying the Petitioner. *Id.* at 3. Thus, the Competent Authority of Spain seeks information from the Bank regarding these accounts and others where Petitioner is the holder, signatory, or beneficial holder. *Id.* at 3. Masuda stated that "[b]ased on [her] review of the EOI Request, [she] ha[s] determined that it is a proper request within the guidelines of the U.S.–Spain Treaty." *Id.* at 4.

Similarly, in his affidavit, Penn stated that his office received an EOI request from the Competent Authority of Spain seeking financial information related to Petitioner. ECF No. [13-2] at 1–2. Penn stated that "[a]fter the IRS determined that the EOI request was proper and within the guidelines of the U.S.–Spain Treaty, Tax Law Specialist Jeffrey Kramer issued an IRS summons on January 26, 2022, for the purpose of obtaining the information requested by" the Competent Authority of Spain. *Id.* at 2. Further, Penn explained that the "Competent Authority of Spain has reviewed Exhibits 2 and 3 to [Petitioner's] Amended Petition [and] has determined that the summoned information is still required to aid in the income taxes and capital taxes, all relating to tax periods January 1, 2015 to December 31, 2018." *Id.* at 3. Penn concluded that "[b]ased on [his] review of the EOI Request, [he] ha[s] determined that it is a proper request within the guidelines of the U.S.–Spain Treaty" and "that it is and continues to be appropriate for the United States of America to honor the EOI Request and thereby lend assistance and support to Spain, as required by the U.S.–Spain Treaty, regardless of Exhibits 2 and 3 to Plaintiff's Amended Petition." *Id.* at 4. The above submissions are sufficient to show "that the investigation will be conducted pursuant to a legitimate purpose," and therefore, the first *Powell* factor is satisfied.

Second, the Government has shown "that the inquiry will be relevant to that purpose" for issuing the Summons. *La Mura*, 765 F.2d at 979 (citing *Powell*, 379 U.S. at 57–59). In each of their affidavits, Masuda and Penn stated that "[b]ased upon the information furnished by the Spain Competent Authority, there is a reasonable basis to believe that the summons may produce information relevant to Spain's examination of [Petitioner]." ECF Nos. [13-1] at 4; [13-2] at 4. These representations are sufficient to satisfy the second prong.

Third, the Government has shown "that the information sought is not already in the IRS' possession." *La Mura*, 765 F.2d at 979 (citing *Powell*, 379 U.S. at 57–59). In her affidavit, Masuda stated both that "[i]n the context of an EOI request, it is understood that this representation means that Spain does not have the information it seeks in its possession" and "[t]he IRS also does not have this information in its possession." ECF No. [13-1] at 4. Similarly, in his affidavit, Penn stated that "[w]ith respect to the information requested in the summons directed to Banco Sabadell, at the time that the summons at issue in this case was prepared, issued, and served, the summonsed information was not in the possession or control of the IRS." ECF No. [13-2] at 3. These representations are sufficient to satisfy the third prong.

Finally, the Government has shown "that it has taken the administrative steps necessary to the issuance of a summons." *La Mura*, 765 F.2d at 979 (citing *Powell*, 379 U.S. at 57–59). In her affidavit, Masuda stated that "[t]he EOI Request provides that it is in conformity with the laws and administrative practices of Spain," and "[a] notice copy of the summons was sent to Petitioner on January 26, 2022." ECF No. [13-1] at 3–4. Similarly, in his affidavit, Penn stated that "[a]ll administrative steps required by the Internal Revenue Code for the issuance of the summons have been taken." ECF No. [13-2] at 3. These representations are sufficient to satisfy the fourth prong.

### C. Petitioner Has Failed To Disprove Any *Powell* Factor Or Otherwise Show That Enforcement Of The Summons Would Be An Abuse Of The Court's Process.

Because the Government has met its burden to show good faith through the *Powell* factors, "the burden shifts to the party contesting the summons [here, Petitioner] to disprove one of the four elements of the government's prima facie showing or convince the court that enforcement of the summons would constitute an abuse of the court's process." *La Mura*, 765 F.2d at 979–80 (citing *Powell*, 379 U.S. at 58). As noted above, Petitioner's burden is "a 'heavy one,' requiring allegations of specific facts and introduction of evidence." *Verges*, 2018 WL 3423965, at *1 (citing *Leventhal*, 961 F.2d at 940). Petitioner has failed to rebut any of the *Powell* factors and has not otherwise shown that enforcement of the Summons would be an abuse of the Court's process.

#### i. Petitioner's Residency Is Not Relevant To The Issues Before This Court.

Petitioner asserts two similar, but distinct, arguments regarding his residency. First, Petitioner attempts to rebut the first *Powell* factor by arguing that the IRS did not issue the Summons for a legitimate purpose because the U.S.–Spain Treaty does not apply to Petitioner due to his non-resident status in both Spain and the United States. ECF No. [16] at 9. Second, Petitioner argues that "[i]t would be an abuse of the Court's process to find that use of the U.S.–Spain Treaty on a non-resident of Spain or the United States during the subject tax years is foreseeably relevant for carrying out the U.S.–Spain Treaty." ECF No. [16] at 9. To support both arguments, Petitioner relies on two exhibits, which purportedly show his non-resident status, and the text of the U.S.–Spain Treaty, which he argues excludes Petitioner from its scope.[4]

---

[4] Petitioner cites only two cases in support of this argument; however, both are relied on solely for the legal standards therein. *See* ECF No. [16] at 8 (citing *G2A.COM Sp. z.o.o. (Ltd.) v. United States*, 789 F. App'x 296 (3d Cir. 2019) (affirming the district court's partial denial of petition to quash IRS summons with no discussion of residency issues)); *id.* at 9 (citing *Powell*, 379 U.S. at 57–58).

12

The Government responds that "[w]hether or not the Kingdom of Spain determined that [Petitioner] was not a tax resident of Spain is irrelevant," for two primary reasons. ECF No. [13] at 7. First, the Government argues that the U.S.–Spain Treaty is not limited to residents of Spain and/or the United States, as Petitioner contends, because Article 27 of the treaty is not limited by the scope outlined in Article 1. *Id.* Second, the Government argues that the Court need not reach the question of whether Petitioner is a resident of Spain because "[t]he Court's inquiry is limited to whether the United States responded in good faith to a treaty request. If so, that is the end of the matter. The Court does not have to weigh in on the substance of the requesting nation's tax law." ECF No. [13] at 2.

As discussed above, Petitioner's residency is not at issue here. As an initial matter, arguments as to his residency do not exempt him for the application of the treaty as a matter of law. In addition, the argument does not undermine the *Powell* factor requiring that the summons be issued for a legitimate purpose. Indeed, a Court in this District recently rejected a nearly identical argument. *See Verges*, 2018 WL 3423965, at *1. In *Verges*, the petitioner challenged a summons issued by the IRS to a bank at the request of the Spanish Tax Agency pursuant to the U.S.–Spain Treaty. *Id.* There, the petitioner similarly challenged the legitimacy of the IRS's purpose in issuing the summons, arguing that "the Spanish tax authorities were pursuing the case against [p]etitioners in bad faith or for an illegitimate purpose and that there had been no determination in the Spanish courts whether [p]etitioners were in fact residents under Spanish law." *Id.* The Court rejected the petitioner's argument, finding that "the good or bad faith of the requesting nation is not relevant to the Court's determination." *Id.* (citing *Mazurek v. United States*, 271 F.3d 226, 231 (5th Cir. 2001)); *see also Mazurek*, 271 F.3d at 231 ("The problem with this reasoning . . . is that Mazurek focuses on the legitimacy of the FTA's investigation, not on

13

the legitimacy of the IRS's compliance with the FTA's request. Yet, to rebut the *Powell* requirement, Mazurek must show that the IRS is acting in bad faith."). Similarly, Petitioner's residency arguments herein challenge the good faith of the underlying Spanish tax investigation as opposed to the good faith of the IRS's compliance with the request for exchange of information. Because the latter is the only question before this Court, Petitioner has not met his "heavy burden" to overcome the Government's showing of good faith on this ground.

    ii. **Whether Petitioner Is Subject to A Criminal Prosecution in Spain is Not Relevant To The Issues Before This Court.**

Petitioner next argues that the Summons must be quashed because the Summons is "a clearly veiled effort to assist a foreign government in launching an investigation against the Petitioner for potential criminal activity". ECF No. [12] at 13. Although Petitioner does not articulate the specific challenge, the Court construes Petitioner's argument as alleging that enforcement of the Summons would be an abuse of the Court's process. Petitioner first cites *only* to an article posted on a law firm website for the proposition that if the Spanish tax authorities receive information "sufficient to give rise to criminal charges . . . it absolutely will form the basis of a criminal action . . . because in Spain 'once criminal charges have been alleged and found to be supported by sufficient evidence, the prosecutor generally has no choice but to seek a conviction under the law.'" ECF No. [12] at 12 (citing Daniel R. Alonso, et al., *Cross-Border Internal Investigations in Spain: The Legal and Practical Landscape*, ANTI-CORRUPTION REPORT (Dec. 2, 2020), https://buckleyfirm.com/sites/default/files/Buckley-Article-ACR-Cross-Border-Internal-Investigations-in-Spain-Pt-1-2_0.pdf). Petitioner then cites three cases for the proposition that "[c]ourts have often refused to enforce IRS[] summons[es] when they could even potentially be used in a criminal investigation." ECF No. [12] at 12–13 (citing *United States v. Lamotte*, No. 15-mc-93017-MGM, 2016 WL 2731623, at *1 (D. Mass. Apr. 19, 2016); *United States v. Argomaniz*,

925 F.2d 1349 (11th Cir. 1991); *United States v. Arthur Anderson & Co.*, 474 F. Supp. 322 (D. Mass. 1979)).

The Government responds that Petitioner's argument again misses the point, as the only question before the Court is whether the IRS acted in good faith, without reaching the merits of the Spanish investigation. ECF No. [13] at 12–13. The Government argues that Petitioner's authority has "nothing to do with the instant case," as each of the cases cited by Petitioner deals only with the United States' attempts to develop criminal proceedings and not a foreign nation's request for information. ECF No. [20] at 6. Citing *United States v. Stuart*, the Government argues that the Supreme Court has rejected the same argument that "because Section 7602(c) forbids the IRS from issuing a domestic summons when a Justice Department criminal referral is in effect, the IRS also could not issue a summons to assist in a treaty partner's criminal tax investigation." *Id.* (citing *Stuart*, 489 U.S. at 357, 363).

Petitioner's argument that the Summons must be quashed because it will necessarily result in a criminal proceeding in Spain is unavailing. As with Petitioner's residency argument, this argument also seeks to challenge the propriety of the underlying Spanish investigation—which is not before the Court in an enforcement proceeding. Further, Petitioner has proffered no evidentiary support for the proposition that "the Spanish government appears to be working in conjunction with [the State Tax Administration Agency of Spain] and the IRS . . . in order to facilitate the Investigation Phase of their developing proceeding." ECF No. [16] at 10.

Additionally, the argument is unsupported by authority. Petitioner cites three cases for the proposition that "[c]ourts have often refused to enforce IRS[] summons[es] when they could even potentially be used in a criminal investigation," however, each is readily distinguishable. ECF No. [12] at 12–13. In *United States v. Argomaniz*, the only case Petitioner cites from this Circuit, the

15

Government filed a petition to enforce an IRS summons against an individual, after the individual asserted his Fifth Amendment privilege against self-incrimination. 925 F.2d 1349 (11th Cir. 1991). Therein, the Court denied the Government's motion to enforce "[b]ecause compliance with the IRS summons could violate [the respondent's] fifth amendment privilege against self-incrimination and because the district court failed to make a particularized inquiry necessary". *Id.* at 1356. The Court's analysis hinges entirely on the assertion of a Fifth Amendment privilege and whether that privilege was waived—whereas here, Petitioner asserted no such privilege either in his papers or at the Hearing. *Id.* Similarly, both *United States v. Lamotte* and *United States v. Arthur Anderson & Co.* concern the assertion of a Fifth Amendment privilege in connection with refusal to respond to an IRS summons—which is not at issue herein. *Lamotte*, 2016 WL 2731623, at *1; *Arthur Anderson & Co.*, 474 F. Supp. at 322.

To the contrary, and as the Government points out, Petitioner's argument was addressed and rejected by the Supreme Court in a similar context. In *United States v. Stuart*, the Court held that "[s]o long as the [IRS] summons meets statutory requirements and is issued in good faith, as we defined that term in [*Powell*], compliance is required, whether or not the Canadian tax investigation is directed toward criminal prosecution under Canadian law." 489 U.S. at 355–56. Further, the reasoning of the *Verges* court applies herein as well, as Petitioner is again challenging the underlying Spanish investigation, yet "the good or bad faith of the requesting nation is not relevant to the Court's determination." 2018 WL 3423965, at *1.

### iii. The Summons Complies with Administrative Requirements.

Petitioner's final arguments challenge the fourth *Powell* factor: "that [the IRS] has taken the administrative steps necessary to the issuance of a summons." *La Mura*, 765 F.2d at 979 (citing *Powell*, 379 U.S. at 57–59). Specifically, Petitioner argues: (1) the Summons fails to "expressly

16

declare that it is assisting an investigation of the Kingdom of Spain"; (2) the Summons is defective on its face because it states that it seeks documents relating to "enforcement of the internal revenue laws," when it is not being used to "carry out the laws of the IRS"; (3) the IRS failed to provide notice to the owner of the accounts at issue in the Summons, Technical Minds Investment SL, and instead only served Petitioner.  ECF Nos. [12] at 4–5, 13–14; [16] at 2–3, 9, 12–13.  At the Hearing, Petitioner argued that while the Summons may have adequately placed Petitioner on notice of the Spanish proceeding, it simply "needs to be perfect."

The Government responds that the Summons is not defective on its face, and that the IRS provided all the notice that was required under the Internal Revenue Code.  ECF No. [13] at 4.  As to Petitioner's first and second arguments, the Government responds that "there is no requirement that the summons explicitly state that it is being made for the purpose of providing assistance to a foreign treaty partner," but "in any event, the summons says that it is issued 'In the matter of the Spanish Income and Tax Liabilities of: Juan Ramon Gomis Rabassa.'"  ECF No. [13] at 13.  As to Petitioner's third argument regarding notice, the Government responds that "there is no requirement under the [Internal Revenue Code] that the IRS serve Technical Minds with the summons," as "Technical Minds—unlike Petitioner—was not 'identified' in the summons."  ECF No. [13] at 13.  The Government cites section 7609(a) of the Internal Revenue Code, requiring that notice be given to "any person (other than the person summonsed) who is identified in the summons."  ECF No. [13] at 13 (citing 26 U.S.C. § 7609(a)(1)).  Further, the Government argues that Petitioner lacks standing to assert the notice argument as to Technical Minds Investment SL, because it does not concern the Petitioner's own injury.  ECF No. [13] at 14.

The Court first finds that the Summons is not defective on its face.  In two separate and conspicuous locations the Summons indicates that the information therein is sought "pursuant to a

17

request by the Spanish Tax Authorities in accordance with our Income Tax Treaty," and that it is "In the matter of the Spanish Income and Capital Tax Liabilities of: Juan Ramon Gomis Rabassa." ECF No. [12-1] at 1–2.  Petitioner's argument that the same notice should be provided again in a later portion of the Summons is unsupported by the requirements of the Internal Revenue Code. Similarly, the IRS's use of the phrase "connected with the administration or enforcement of the internal revenue laws," while standardized, is neither impermissible nor false.  ECF No. [12-1] at 2.  The IRS issued the Summons pursuant to its authority in Section 7602 of the Internal Revenue Code, and while it was issued at the request of the Spanish authorities, that fact has been clarified already at the top of the same page of the Summons such that there could be no confusion of the purpose of the Summons.  *See* ECF No. [12-1] at 2.

As to notice, the Court finds that the IRS satisfied its obligation.  Notably, Petitioner does not argue that *he* did not receive notice, but rather that a company, with which he alleges no affiliation, did not receive notice although the account numbers mentioned in the Summons allegedly correspond with that company's accounts.  ECF No. [12] at 5.  After careful review of the Summons, the Court is not persuaded that the form used failed to provide the required notice. As such, Petitioner has failed to meet his heavy burden to overcome the Government's prima facie showing that the Summons met all administrative requirements in good faith.

### D.  An Evidentiary Hearing Is Not Necessary.

Finally, Petitioner requests an evidentiary hearing "on any disputed factual issues on residency, taxpayer status and the Powell factors."  ECF No. [16] at 13–14.  Petitioner argues that he is entitled to an evidentiary hearing because he "has clearly 'address[ed] . . . the *Powell* factors, [and] allege[d] that the IRS acted in bad faith.'"  ECF No. [16] at 13–14 (citing *United States v. Miller*, No. 5:06-mc-6-Oc-10GRJ, at *5 (M.D. Fla. June 14, 2006) (denying request for evidentiary

hearing)) (alteration in original). The Government opposes Petitioner's request for an evidentiary hearing, arguing that Petitioner's residency and tax status under Spanish law "are entirely irrelevant." ECF No. [20] at 9. The Government notes that a "taxpayer is only entitled to an evidentiary hearing 'when he can point to specific facts or circumstances plausibly raising an inference of bad faith,'" which Petitioner has not done. *Id.* (citing *Clarke*, 573 U.S. at 254).

As outlined herein, Petitioner has not pointed to specific facts or circumstances plausibly raising an inference of bad faith. Petitioner's only "evidence" is found in two exhibits to the Amended Petition, both of which speak to the issue of residency—which the Court has found to be irrelevant. A further evidentiary hearing would be of no aid to the Court herein. Accordingly, the undersigned recommends denial of Petitioner's request for an evidentiary hearing.

## IV. RECOMMENDATIONS

For the reasons noted above the Court **RECOMMENDS** that the Government's Motion to Dismiss, ECF No. [13], be **GRANTED**. The Government established its prima facie case of good faith and Petitioner did not meet his burden in disputing any of the *Powell* factors or showing that the enforcement of the Summons would be an abuse of this Court's discretion.

## V. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, no later than **FOURTEEN (14) DAYS** from the date of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1;

28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida on June 7, 2023.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**